IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

YORKTOWNE UROLOGY, P.C., :
    Plaintiff :
:
vs.                              CIVIL NO. 1:CV-10-0644
:
NEUISYS, LLC, :
    Defendant :

*M E M O R A N D U M*

I.    *Introduction*

Plaintiff, Yorktowne Urology, P.C., a Pennsylvania medical practice providing urological services, bought a scanner from defendant, Neuisys, LCC, a North Carolina company. The scanner was to be used to diagnose kidney, ureter and bladder disorders by making so-called KUBS scans (for kidney, ureter, bladder).

Plaintiff filed suit in state court, alleging that the scanner failed to produce scans of the quality necessary for medical diagnoses. Moreover, for usable scans to be created the scanner had to be adjusted to produce radiation that was unsafe for patients. In other words, Plaintiff claims that the machine failed to do what it was supposed to do. Plaintiff also alleges that Defendant improperly charged it separately for the software to operate the scanner.

Plaintiff presents seven causes of action: (1) in Count I, a fraudulent inducement claim, alleging that Defendant knowingly made false representations to induce Plaintiff to purchase the scanner; (2) in Count II, a claim for promissory and equitable estoppel; (3) in Count III, a claim for breach of contract, asserting that Defendant refused to recognize Plaintiff's rejection of the scanner or, in the alternative, its

revocation of the contract; (4) in Count IV, a claim for breach of express warranty, invoking the Pennsylvania Uniform Commercial Code; (5) in Count V, a claim for a breach of the implied warranty of merchantability under the Pennsylvania Uniform Commercial Code; (6) in Count VI, a claim for strict liability under the Restatement (Second) of Torts § 402A; and (7) in Count VII, a claim for a breach of the duty of good faith and fair dealing.

Invoking our diversity jurisdiction, *see* 28 U.S.C. § 1332(a), Defendant removed the action here. We are considering its motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), asserting that none of Plaintiff's claims are valid. On a motion to dismiss, "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010)(quoted case omitted).

II. *Discussion*

    A. *The Fraudulent Inducement Claim Is Not Barred by Pennsylvania's Gist of the Action Doctrine Or By the Integration Clause*

In Count I, Plaintiff alleges Defendant fraudulently induced it into purchasing the scanner by the following misrepresentations: (1) "CT technologists qualified to operate the Scanner were readily available when in fact they were not available at all"; (2) Defendant "could supply and refer a qualified CT technologist when the Scanner was delivered and installed when in fact it had no one available and Yorktowne Urology was forced to advertise for a qualified CT technologist"; "[f]ailing to disclose that the Scanner was unsafe and was reasonably (sic) dangerous to patients in ordinary use"; "[f]ailing to disclose that, in order to obtain diagnostic quality images, Yorktowne Urology would have

2

to expose patients to illegal, dangerous and excessive levels of radiation"; "[f]ailing to disclose that the defective and dangerous condition of the Scanner was so severe that Neuisys had replaced a similar scanner at another location where the same type of Scanner had been installed"; "[f]ailing to disclose that the KUBS software installed on the Scanner was not FDA approved"; "[f]ailing to disclose that Plaintiff would be charged an additional $55,000 to perform KUBS scans when the software was approved"; and "[r]epresenting that the Scanner was fully operational, properly calibrated and ready for use when it was delivered and installed when it was not in fact fully operational, properly calibrated or ready for use."  (Doc. 1-4, Compl. ¶ 79(a)-(h)).

Defendant moves to dismiss this claim on two grounds.  First, if Pennsylvania law applies, it is barred by the gist of the action doctrine and by the agreement's integration clause.  Second, if North Carolina law applies, it is barred by the integration clause.

We have reviewed the parties' arguments and cases cited in support, and we disagree with Defendant for the following reasons.  In a diversity case, a federal court applies the law of the state where it sits, including the state's choice-of-law rules.  *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 360 (3d Cir. 2004).  We therefore apply Pennsylvania law.

In applying that law, we note that, generally, Pennsylvania will enforce choice-of-law provisions in contracts.  *Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007).  In the instant case, the parties agreed that their contract would "be governed by the laws of the State of North Carolina."  (Doc. 1-5, Agreement ¶ 19, CM/ECF p. 5).[1]  Under Pennsylvania law, the parties' contractual choice of the law that governs their

---

[1] The page number refers to the page number assigned by the Case Management/Electronic Case Files (CM/ECF) system.

3

agreement also governs a claim that a party was fraudulently induced to make the contract. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167,178 (3d Cir. 1992)(citing *Smith v. Commonwealth Nat'l Bank*, 384 Pa. Super. 65, 69, 557 A.2d 775, 777 (1989)); *De Lage Landen Fin. Servs., Inc. v. CardService Int'l, Inc.*, 2001 WL 799870, at *2 (E.D. Pa.). Hence, we apply North Carolina law to the fraudulent inducement claim.[2]

As noted, Defendant argues the claim is invalid under North Carolina law because of the agreement's integration clause.[3] However, in North Carolina, an integration clause is no defense to a claim that a party was induced to enter the contract by fraud. *Am. Laundry Mach. Co. v. Skinner*, 34 S.E.2d 190, 192-93 (N.C. 1945) (recognizing a claim for fraud in the inducement even though the contract contained an integration clause, reasoning that fraud "vitiates the contract"); *Godfrey v. Res-Care, Inc.*, 598 S.E.2d 396, 402-03 (N.C. Ct. App. 2004)(parol evidence rule did not bar evidence proving that a written contract containing an integration clause was procured by fraud); *S. Carolina Elec. & Gas Co. v. Westinghouse Elect. Corp.*, 826 F. Supp. 1549, 1555 (D.S.C. 1993)("North Carolina law recognizes that the rebuttable presumption created by a merger or integration clause, a clause which expresses that a contract is the totality of the parties, agreement, can be overcome upon a showing of fraud").

---

[2] The law in this area is not entirely settled, *compare Corestates Bank, N.A. v. Signet Bank*, 1996 WL 482909, at *5 n.3 (E.D. Pa.), but we conclude we are bound by Third Circuit precedent addressing the precise choice-of-law issue we confront here. We note that *Smith*, the state-court opinion cited in *In re Allegheny*, dealt with a choice-of-law provision identical to the one here. 384 Pa. Super. at 68, 557 A.2d at 777. In any event, Defendant's analysis of the choice of law, relying on *Coram Healthcare Corp. v. Aetna U.S. Healthcare Inc.*, 94 F. Supp. 2d 589, 593-94 (E.D. Pa. 1999), is unconvincing because of factual differences from that case.

[3] The integration clause reads as follows: "These terms and conditions, including any attachments or other documents incorporated by reference herein, constitute the entire agreement and the complete and exclusive statement with respect to the subject matter hereof, and supersede any and all prior agreements, understandings, and communications between the parties with respect to the Products." (Doc. 1-5, Agreement ¶ 20, CM/ECF p. 5).

4

Plaintiff can thus proceed on its claim of fraud in the inducement in CountI.[4]

  B. *Plaintiff Fails to State a Claim*
    *for Promissory or Equitable Estoppel*

In Count II, Plaintiff makes claims for promissory and equitable estoppel. It alleges that it relied on Defendant's representations in accepting delivery of the scanner in August 2008 and by entering into, and beginning to make payments on, the "financing lease."[5] The representations concerned "the availability of CT technologists and service engineers and the readiness of the Scanner for use . . . ." (Doc. 1-4, Compl. ¶ 88, CM/ECF p. 17). As relief, Plaintiff seeks damages in the amount of payments made to the financing company and the charges incurred when Plaintiff terminated the lease agreement. Plaintiff also "requests a determination that [Defendant] be estopped to claim either that the Scanner was accepted in August 2008, was ready for use or that the period of warranty began to run prior to February 2009." (*Id.*, CM/ECF p. 18).

Defendant moves to dismiss Count II on the following grounds. First, Plaintiff is attempting to use promissory estoppel as a cause of action, but in North Carolina promissory estoppel cannot be used for an affirmative recovery but can only be used in a defensive way. Second, under both North Carolina and Pennsylvania law, the integration clause bars these claims, as an attempt to modify the contract with these

---

[4] If Pennsylvania law had applied, Defendant's argument based on the gist of the action doctrine would appear to fail. The doctrine in part bars a fraud claim when the claim is based on alleged pre-agreement misrepresentations concerning subject matter specifically dealt with in the contract, even if the contract contains an integration clause. *See First United Bank & Trust v. PNC Fin. Servs. Group, Inc.*, 667 F. Supp. 2d 443, 450-51 (M.D. Pa. 2009). Here, the subject matter of the alleged misrepresentations is not specifically mentioned in the parties' agreement. On the other hand, Defendant's argument based on the integration clause would apparently succeed since under Pennsylvania law such a clause means that the parol evidence rule bars even a fraud-in-the-inducement claim. *See Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 498 n.26, 854 A.2d 425, 437 n.26 (2004)(citing *HCB Contractors v. Liberty Place Hotel Associates*, 539 Pa. 395, 398, 652 A.2d 1278, 1279 (1995)).

[5] Plaintiff alleges that it purchased the scanner by way of the financing lease, suggested by Defendant. (Doc. 1-4, Compl. ¶ 19, CM/ECF p. 8).

alleged representations.  Third, citing Pennsylvania law, promissory estoppel may only be used to *enforce* a promise, not to seek damages for an alleged *breach* of certain promises, which is what Plaintiff is attempting here.

In opposition, Plaintiff argues that Pennsylvania law allows a promissory estoppel claim seeking affirmative relief, conclusorily asserting that Pennsylvania choice-of-law rules apply, allowing him to make this claim under Pennsylvania law.  Plaintiff then switches without explanation to North Carolina law to argue that under North Carolina law it has a valid equitable estoppel claim.

We will make no choice of law on Count II.  Accepting Plaintiff's choice of law for these claims, we conclude, as Defendant has argued, that Count II fails to state a claim under either promissory or equitable estoppel because the parol evidence rule bars such a claim by way of the integration clause.

Under Pennsylvania law, one of the elements of promissory estoppel is that the promisor (Defendant) must have reasonably expected the promisee (Plaintiff) to have acted upon the alleged promise.  *Lobolito, Inc. v. N. Pocano Sch. Dist.*, 562 Pa. 380, 390 n.9, 755 A.2d 1287, 1292 n.9 (2000).  However, when as here, parties have entered into a fully integrated written agreement, as shown by the integration clause, this element is absent, as a promisor could not have reasonably expected the promisee to have relied on promises that were not made part of the agreement, and further, were explicitly excluded from the agreement by the integration clause.  *Cf. Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 501-02, 854 A.2d 425, 438-39 (2004)(statutory consumer-protection claim that required a showing of justifiable reliance on the defendant's representations failed to state a claim because the plaintiff could not justifiably have relied on representations excluded by virtue of the parol evidence rule and an integration clause).  We have been unable to locate any Pennsylvania cases dealing with a

promissory estoppel claim, but other jurisdictions have rejected such a claim on the basis of the parol evidence rule. *See Gonzalez v. United Bhd. of Carpenters & Joiners*, 93 S.W.3d 208, 211 (Tex. Ct. App. 2002) (rejecting both promissory and equitable estoppel claims); *Ed Schory & Sons, Inc. v. Soc'y Nat'l Bank*, 662 N.E.2d 1074, 1080-81 (Ohio 1996); *S&J Transp. & Storage v. Nelson*, 1999 WL 1138522, at *3 (Minn. Ct. App. 1999); *Cogburn v. Conagra Poultry Co.*, 1997 WL 136256, at *2-3 (Ark. Ct. App. 1997).

As to the equitable estoppel claim under North Carolina law, the same reasoning leads to rejection of that claim as well. North Carolina also enforces the parol evidence rule. *See Hall v. Hotel L'Europe, Inc.*, 318 S.E.2d 99, 101 (N.C. Ct. App. 1984). Under North Carolina law, one of the elements of equitable estoppel is that the person seeking to enforce the estoppel must have "rightfully relied" on another's representations. *Thompson v. Soles*, 263 S.E.2d 599, 602 (N.C. 1980). It follows that Plaintiff could not have "rightfully relied" on Defendant's representations when they were excluded from the contract by the integration clause.

We will therefore dismiss Count II.

C. *Plaintiff States a Claim Based on Rejection or Revocation of the Contract*

In Count III, Plaintiff alleges a breach-of-contract claim on the basis that Plaintiff timely rejected the contract after discovering the scanner did not function properly, or if rejection was not timely, on the basis that it timely revoked the contract. Defendant moves to dismiss this claim, arguing that under the North Carolina Uniform Commercial Code Plaintiff accepted the goods and neither timely rejected them nor did it timely revoke the contract.

Under North Carolina law, a buyer accepts goods when it: (1) signifies to the seller after a reasonable opportunity for inspection that the goods are conforming; (2)

7

signifies to the seller that it will take or retain the goods in spite of their nonconformity; or (3) does any act inconsistent with the seller's ownership. N.C. Stat. Ann. § 25-2-606(1). "Acceptance . . . precludes rejection of the goods accepted and if made with knowledge of a nonconformity cannot be revoked because of it unless the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured . . . ." N.C. Stat. Ann. § 25-2-607(2).

A buyer may reject goods if they fail in any respect to conform to the contract. N.C. Stat. Ann. § 25-2-601. Rejection must be within a "reasonable time" after delivery and is ineffective unless "seasonably" made. N.C. Stat. Ann. § 25-2-602(1).

Even if a buyer has accepted goods, in pertinent part, it may revoke its acceptance if it was based on "the reasonable assumption that . . . nonconformity would be cured and the nonconformity was not "seasonably cured" by the seller. N.C. Stat. Ann. § 25-2-608(1)(a). "Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it . . . ." *Id.*, § 25-2-608(2). "A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them." *Id.*, § 25-2-608(3).

The following allegations are pertinent to the issues of acceptance and revocation. The scanner was delivered to Plaintiff in August 2008. (Doc. 1-4, Compl. ¶¶ 28, 88 and 89).[6] At some point thereafter, probably February 2009, Plaintiff attempted to use the scanner but could not obtain quality scans. The suggested solution to this problem was to increase the radiation, which would have endangered health-care personnel and patient safety. (*Id.* ¶¶ 48, 49, and 53). The service engineers Defendant sent before December 2009 could not make the scanner function safely and effectively, (*id.* ¶ 52), and despite Defendant's "repeated promises and assurances" that the scanner

---

[6] The latter two paragraphs allege that Plaintiff "accept[ed]" delivery in August 2008.

8

would be repaired "so that it would function safely and effectively," Defendant never cured the product's defects. (*Id.* ¶ 55). In December 2009, the Pennsylvania Department of Environmental Protection told Plaintiff to remove the scanner from service. (*Id.* ¶ 56). On January 11, 2010, Plaintiff notified Defendant by letter that it was rejecting the scanner or that it was revoking any prior acceptance. (*Id.* ¶ 70, and Ex. E).

We conclude that Plaintiff's claims of rejection and revocation survive the motion-to-dismiss stage. Here, Plaintiff alleges that Defendant represented it would repair the scanner and repeatedly assured Plaintiff it would do so. Attempts at repair are relevant to whether rejection has been "seasonably" made, *see Davis v. Vintage Enterprises, Inc.,* 209 S.E.2d 824, 829 (N.C. Ct. App. 1974), and whether revocation has been made within a "reasonable time." *Business Communications, Inc. v. Ki Networks, Inc.*, 580 S.E.2d 77, 79 (N.C. Ct. App. 2003)(the reasonable time period may be extended when the parties have made attempts at adjustment).[7] Revocation is typically a question for the fact finder, *Business Communications*, 580 S.E.2d at 79, and rejection has also been found to be a factual question. *See Noland Co. v. Poovey*, 282 S.E.2d 813, 819-20 (N.C. Ct. App. 1981).

We will therefore allow Count III to proceed.

---

[7] Noting that the parties can agree to limit remedies, see N.C. Stat. Ann. § 25-2-719, Defendant also argues that Plaintiff gave up the right to revoke the contract when it agreed that "[i]n no event can an order be cancelled by Purchaser or Products be returned to Seller after shipment has been made." (Doc. 1-5, Compl., Ex. B, ¶ 8.2, CM/ECF p. 4). We disagree. This paragraph merely provides that the purchaser cannot change its mind after delivery has been made. It in no way limits Plaintiff's rights regarding the scanner after delivery.

### D. *Plaintiff Fails to State a Claim for Breach of Express Warranty*

In Count IV, Plaintiff makes a claim for breach of an express warranty.[8] It alleges that Defendant "expressly warranted the Scanner to be free from defects," (Doc. 1-4, Compl. ¶ 105), but that instead the "Scanner was materially defective and unreasonably dangerous." (*Id.* ¶ 106). Plaintiff seeks as damages, the purchase price of the scanner, the costs of moving and storing it, and lost income while it could not perform scans.

Defendant moves to dismiss this claim, asserting that under the contract it agreed to provide only a limited warranty, warranting only that the scanner would "be free from defects in material or workmanship," (*id.*, Ex. B, Agreement ¶ 10, CM/ECF p. 4), and limiting its obligation to "repair or replacement, at Seller's option, of defective parts." (*Id.*, Ex. B, Agreement ¶ 10.2, CM/ECF p. 4). Defendant points out that Plaintiff makes no claim for defective parts or workmanship, and argues that the claim is only that the scanner "did not meet its performance expectations." (Doc. 5, Br. In Supp. at p. 16).

We will dismiss this claim. Plaintiff insists that Defendant expressly warranted that the scanner would be free from defects (rather than from defects in material and workmanship), but cites no contractual provision in support. There simply is no express warranty of the scope Plaintiff avers, and Count IV will therefore be dismissed.

### E. The Breach of Implied Warranty Claim

In Count V, Plaintiff alleges that Defendant breached an implied warranty of fitness and merchantability that the scanner could be used safely without exposing

---

[8] Plaintiff relies on the Pennsylvania Uniform Commercial Code, but the North Carolina Uniform Commercial Code applies, and we will cite North Carolina law.

10

patients to excessive radiation.  The scanner thus "ha[d] no value" (doc. 1-4, Compl. ¶ 118), and Plaintiff is entitled to recover as damages the purchase price, its loss of income from scans not performed and the cost of moving and storing the scanner.  (*Id.*, CM/ECF pp. 22-23).

Defendant moves to dismiss this claim because it disclaimed any express or implied warranties except for the express warranty that the scanner would be free from defects in material or workmanship and limiting its obligation to repair or replacement, at its option, of defective parts.  This disclaimer also excluded any express or implied warranty of merchantabilty or fitness for a particular purpose.

In opposition, Plaintiff asserts that any limitation of warranty or remedy is unenforceable because it would be unconscionable for two reasons.  First, Plaintiff asserts that under N.C. Stat. Ann. § 25-2-719(3), a limitation of damages for injury to the person in the case of consumer goods is prima facie unconscionable.  Second, the disclaimer is unconscionable because the scanner is a device exposing the public to radiation and Defendant should not be allowed to disclaim an implied warranty involving public safety.  Plaintiff also asserts the disclaimer should not be enforced because the limitation of remedies to the cost of materials needed to repair or replace defective parts failed of its essential purpose since Defendant was never able to make the scanner work in a safe and effective manner.  *See* N.C. Stat. Ann. § 25-2-719(2).

Plaintiff's arguments concerning unconscionability fail.  As to the first argument, the scanner is not a consumer product, and there is no claim of personal injury in this case.  As to the second argument, North Carolina does not analyze unconscionability in that way.  Under North Carolina law, a limitation of remedy is usually not held to be unconscionable in a commercial setting because the parties are not in a one-sided relationship.  *Byrd Motor Lines, Inc. v. Dunlop Tire & Rubber Corp.*, 304 S.E.2d

773, 776-77 (N.C. Ct. App. 1983). That is the situation here so Plaintiff's second argument fails.

However, we find merit in Plaintiff final argument, that we should not enforce the contractual limitation of remedies to repair or placement of defective parts because that remedy failed of its essential purpose. As noted, Plaintiff alleges that this remedy failed because Defendant, despite repeated attempts, was unable to fix the scanner so that it operated properly. In these circumstances, Plaintiff can pursue other remedies under the Code, *see Stutts v. Green Ford, Inc.*, 267 S.E.2d 919, 925-26 (N.C. Ct. App. 1980), although the exclusion of recovery of consequential damages in paragraph 11.2 of the agreement (doc. 1-5, CM/ECF p. 4), is still valid. *Stutts*, 267 S.E.2d at 926.

We will therefore permit Count V to proceed at this time, for the limited purpose of allowing Plaintiff to seek other remedies under North Carolina's version of the Uniform Commercial Code except for consequential damages excluded by the contract.[9]

    F. *Plaintiff Fails to State a Claim for Strict Liability Under the Restatement (Second) of Torts § 402A*

In Count VI, Plaintiff state claim for strict liability under the Restatement (Second) of Torts § 402A. Defendant moves to dismiss this claim because Plaintiff does not allege physical injury to its property. We agree, *see Lobianco v. Property Protection, Inc.*, 292 Pa. Super. 346, 356, 437 A.2d 417, 422 (1981), and Count VI will be dismissed.

---

[9] We express no opinion on whether other damages excluded by the contract may be sought in light of the allegations that the limited remedy failed its essential purpose.

12

### G. *Plaintiff States a Claim for the Breach of the Duty of Good Faith and Fair Dealing*

In Count VII, Plaintiff makes a claim for Defendant's breach of the duty of good faith and fair dealing. Defendant moves to dismiss this claim, arguing that there is no duty of good faith and fair dealing in the absence of a special relationship. We disagree. See N.C. Stat. Ann. § 25-2-304 ("Every contract or duty within this Chapter imposes an obligation of good faith in its performance and enforcement."). *See also Sara Lee Corp. v. Quality Mfg., Inc.*, 201 F. Supp. 2d 608, 615 (M.D.N.C. 2002). Count VII will proceed.

### H. *Plaintiff's Contractual Claims for Incidental, Consequential and Punitive Damages Will Be Dismissed*

The Agreement excludes recovery for incidental, consequential and punitive damages, (doc. 1-5, Compl, Ex. B, Agreement ¶ 11.2), and Defendant moves to dismiss any claim for these types of damages. We will dismiss any contractual claim for these damages but must agree with Plaintiff, at this point at least, that these damages may be asserted as part of the fraud-in-the-inducement claim.

### III. *Conclusion*

Based on the foregoing discussion, Plaintiff may proceed on its: (1) fraudulent inducement claim in Count I; (2) breach-of-contract claim in Count III; (3) breach-of-implied warranty claim in Count V but only for the limited purpose of allowing Plaintiff to seek other remedies under the North Carolina Uniform Commercial Code except for consequential damages; and (4) the claim for breach of the duty of good faith and fair dealing in Count VII. Count II (promissory and equitable estoppel), Count IV

(express warranty), and Count VI (the Restatement (Second) of Torts § 402A) will be dismissed.

        We will issue an appropriate order.

                                                      /s/William W. Caldwell
                                                      William W. Caldwell
                                                      United States District Judge

Date: August 23, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

YORKTOWNE UROLOGY, P.C.,     :
    Plaintiff                :
                             :
    vs.                      :  CIVIL NO. 1:CV-10-0644
                             :
NEUISYS, LLC,                :
    Defendant                :

*O R D E R*

AND NOW, this 23rd day of August, 2010, it is ordered that:

    1. Defendant's motion (doc. 3) to dismiss is granted in part and denied in part as follows.

    2. Count II (promissory and equitable estoppel), Count IV (express warranty), and Count VI (the Restatement (Second) of Torts § 402A) are hereby dismissed.

    3. Claims for incidental, consequential and punitive damages that rely solely on a contract theory of recovery are dismissed.

    4. In all other respects, the motion is denied.


                                       /s/William W. Caldwell
                                       William W. Caldwell
                                       United States District Judge